Osiel VILLAREAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–00–00490–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 13, 2001.

Rehearing Overruled May 10, 2002.

Walter Pink, Walter Pink & Associates, Houston, for appellant.

Dan McCrory, Dist. Atty's Office, Harris County, Houston, for appellee.

Panel consists of Justices BRISTER, FOWLER, and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant Osiel Villarreal challenges his conviction for possessing between fifty and two-thousand pounds of marijuana. We affirm.

### I. FACTUAL BACKGROUND

Houston Police Officer Fernando Villasana received a tip from a confidential informant indicating a possible narcotics transaction at the house of a man named Fernando Salvadar, located at 6927 Evans Street in Houston. Officer Villasana, his partner, Officer Oscar Xavier Pena, and other officers began a surveillance of the Evans Street residence. Based on the tip Officer Villasana received, the officers were looking for a Hispanic male and a dark green, four-door sedan.

During their surveillance, the officers saw a green, four-door sedan parked in the driveway of the residence. After three to four hours of surveillance, the officers saw a white car arrive at the residence. Appellant and two other men, Adan Teran and Rolando Cortez, were in the white car. The three entered Salvadar's house and stayed inside for five to ten minutes. Cortez, Teran, and Salvadar then left the house in the white car, and appellant followed them, alone, in the green car. Officer Pena testified that these two vehicles were under surveillance the entire day.

The officers followed the two cars to the parking lot of a trucking company. Appellant left the green car and talked to Teran, who had exited the white car. About fifteen seconds later, appellant entered the rear passenger seat of the white car, Teran entered the driver's seat of the green car, and they left the parking lot with the white car following the green car. Officer Pena testified that none of the occupants did anything there that appeared to be connected with the trucking company.

About five minutes later, the two cars parked next to each other at a convenience

store. Appellant then moved from the back passenger side of the white car to the driver's seat of the white car while another occupant moved to the green car. Officer Pena testified that none of the individuals under observation went inside the store, got gas, or used the store phone.

Driving the white car, appellant followed the green car to a storage facility. After both cars circled the storage facility lot, the green car backed up to the door of unit 117. Appellant pulled the white car up next to the green car, and the occupants appeared to have a short conversation. Thereafter, the white car left the storage facility and parked on a nearby roadside. Officer Pena estimated the white car was "within visual distance," probably twenty to twenty-five yards away. Officer Villasana estimated the distance at forty to fifty feet and opined that from the white car's position, appellant and Saldavar could see the green car, the actions of Teran and Cortez, and anyone coming down the street for about a mile in one direction and a fourth of a mile in the other.

Cortez opened the door to unit 117 and opened the trunk of the green car. Cortez and Teran removed three large, black, duffle bags from the trunk and threw them into storage unit 117. Cortez closed the door to unit 117. Appellant drove around the block in the white car. When he returned to the storage facility, the green car was in the driveway. Officers observed the green car pulled out of the driveway, and the white car followed it.

Officer Pena remained at the storage facility while Officer Villasana and other officers followed the two cars. No one entered or exited the storage facility while Officer Pena maintained surveillance. Officer Pena requested a dog trained to lo-

cate narcotics. The dog alerted to unit 117, indicating there were possible narcotics inside. Officer Pena contacted his partner and told him about the dog's positive alert on unit 117. Officer Pena obtained a search warrant and entered unit 117. He found over 245 pounds of marijuana inside the three duffel bags previously handled by Cortez and Teran.[1] After the dog alerted to unit 117 but before the officers entered the unit, Officer Villasana stopped the white car for a traffic violation.

Appellant was arrested and charged by indictment with the felony offense of possessing marijuana in a useable quantity of more than fifty pounds and less than two-thousand pounds. The charge was enhanced by two prior felony convictions. Appellant entered a plea of "not guilty" to the offense. After finding appellant guilty and finding the allegations in the enhancement paragraphs true, the jury assessed punishment at fifty years' confinement in the Texas Department of Criminal Justice—Institutional Division.

## II. Issues Presented

In five points of error, appellant complains that: (1) the evidence was legally insufficient to establish the offense of marijuana possession; (2) the evidence used to convict appellant derived from an illegal seizure; (3) the trial court erred by refusing to properly apply the law of parties in the application paragraph of the jury instruction; (4) the trial court erred by failing to give the jury an article 38.23 instruction that the jury disregard evidence obtained by an illegal arrest; and (5) the trial court erred by failing to instruct the jury to disregard the trial court's com-

1. Officer Villasana testified that the storage facility also housed over 269 pounds of marijuana.

ments that the range of punishment began at a minimum of 25 years up to life in prison, in violation of Texas Code of Criminal Procedure, article 38.05.

### III. LEGAL SUFFICIENCY

In his first point of error, appellant complains that the evidence was legally insufficient to prove that appellant committed the offense of unlawful possession of a controlled substance. Specifically, appellant contends the State presented no evidence beyond mere speculation that would lead a reasonable person to believe he intentionally or knowingly possessed marijuana.[2]

In reviewing a legal insufficiency claim, we view the evidence in the light most favorable to the verdict and decide whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 7 S.W.3d 136, 141 (Tex.Crim.App. 1999) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We accord great deference " 'to the responsibility of the trier of fact [to fairly] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* In our review, we determine only whether " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *King v. State,* 29 S.W.3d 556, 562 and n. 15 (Tex.Crim.App.2000).

A person commits an offense if that person knowingly or intentionally possesses more than fifty but less than two-thousand pounds of marijuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) & (b)(5) (Vernon Supp.2001). When an accused is charged with unlawful possession of marijuana, the State must prove: (1) the defendant exercised actual care, custody, control, or management over the contraband and (2) the accused knew the object he possessed was contraband. *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim. App.1995). An accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was; thus, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly. *Id.* It makes no difference whether this evidence is direct or circumstantial because, in either case, it must establish to the requisite level of confidence that the accused's connection with the drug was more than fortuitous. *Id.*

Possession entails more than merely being in the presence of contraband; it requires the exercise of dominion and control over the contraband. *Porter v. State,* 873 S.W.2d 729, 732 (Tex.App.— Dallas 1994, pet. ref'd). When the accused is not in exclusive control or possession of the place where the contraband is found, the evidence must affirmatively link the accused to the contraband in such a manner and to such an extent that a reasonable inference may arise that the accused knew of the contraband's existence and that he exercised control over it. *Id.*

There is no rigid formula by which we may find an affirmative link sufficient

---

**2.** Although appellant framed his complaint as one of "insufficient evidence," he cites only the standard of review for legal sufficiency. Thus, we interpret his complaint as challenging only the legal, and not factual, sufficiency of the evidence.

to support an inference of knowing possession. *Id.* Rather, affirmative links are established by a totality of the circumstances. *See, e.g., Sosa v. State,* 845 S.W.2d 479, 483–84 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (finding the totality of the circumstances was of such a character that the jury reasonably could conclude the defendant was aware of the contraband and exercised control over it).

■ Several facts affirmatively link appellant to the knowing possession of marijuana. Both Officers Villasana and Pena testified they saw appellant drive away from the Evans Street residence in the green car. The officers later observed three large bags being taken from the trunk of that car and thrown into the storage unit. The officers later discovered that the bags contained over 245 pounds of marijuana. Both officers testified that, in their experience, narcotics dealers do not typically take uninvolved people with them to sell, transport, or store narcotics. Officer Villasana testified that he had not seen drug traffickers allow people uninvolved with the narcotics drive the narcotics around.

Appellant traveled in tandem with those in the white car between the Evans Street residence and the storage facility, including the random stops in which appellant and the three other participants switched cars and changed positions within the cars. After arriving at the storage facility in the white car, appellant circled the facility and then pulled up next to the green car, parked next to unit 117, and appeared to talk to its occupants. Appellant then drove the white car to a nearby street where he could not only see the bags being transferred from the green car to unit 117, but could also observe approaching traffic from either direction on the road near the storage facility. After the transfer of bags from the green car into unit 117, appellant circled the block, returned to the storage facility where occupants of the green car appeared to be waiting. Appellant left the storage facility in the white car.

Officers Pena and Villasana have extensive experience in narcotics investigation [3] and characterized appellant's conduct traveling to, and at, the storage facility as consistent with counter-surveillance tactics (*i.e.,* trying to determine if law enforcement or others are following). *See Alvarez v. State,* 813 S.W.2d 222, 225 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd) (recognizing link between defendant, riding in separate vehicle, and drugs hidden in trailer by defendant's pattern of counter surveillance). Officer Pena testified that he had seen narcotics traffickers perform counter-surveillance.

Officer Villasana testified that, having stopped the car in which appellant was riding, appellant became nervous when he was told about observations at the storage facility. Both Officers Pena and Villasana opined that appellant's actions that day were consistent with those of a drug trafficker.

After appellant was arrested, Officer Villasana learned that appellant lived in Brownsville, Texas, a border town. The officers also learned that the green car

---

**3.** At the time of trial, Officer Villasana had been with the Houston Police Department for about eighteen years, had been in the narcotics division about fifteen of those years, and had participated in about 1,000 narcotics investigations and arrests. Officer Pena had been an officer with the Houston Police Department for about sixteen years and had spent four years in the narcotics division. He testified he had experience in conducting investigations of large volume narcotics dealers having "over a couple of hundred pounds of marijuana or a kilo or more of cocaine" and, through his work, had personally done narcotics trafficking and transactions.

was registered to Manuela Villarreal, who lives at the same address in Brownsville. Officer Villasana found this fact significant because 99.9 percent of the marijuana that enters Houston comes from the Rio Grande Valley.

Finally, the large volume of marijuana (over 245 pounds) apparently transferred from the car appellant drove to the storage unit links appellant to the marijuana. Officer Pena found the odor strong enough during trial that he could smell it from the witness stand.[4]

Viewing the evidence in the light most favorable to the State, we conclude a rational fact finder could have found beyond a reasonable doubt that appellant knowingly exercised actual control of the marijuana.

Appellant's first point of error is overruled.

## IV. ILLEGAL SEARCH AND SEIZURE

In his second point of error, appellant complains the evidence used against him was the product of an illegal search and seizure. Specifically, appellant contends the officers had no probable cause to search, detain, or seize appellant without a warrant because, *inter alia*, appellant was merely a passenger in the vehicle stopped for a traffic violation.

Appellant moved to suppress his statements and physical reactions to Officer Villasana after the traffic stop. The trial court suppressed appellant's statements but allowed the State to elicit testimony about appellant's demeanor at the time of his arrest. The State introduced testimony from Officer Villasana that, after the traffic stop, appellant appeared "a little more nervous" and "his eyes got kind of wide open" after he told appellant he had been watching him that day.

 We review the trial court's ruling on a motion to suppress for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). In a suppression hearing, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Generally, almost total deference is afforded to a trial judge's determination of historical facts, especially when the findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, appellate courts review *de novo* a trial court's determination of mixed questions of law and fact that do not turn on an evaluation of credibility. *Id.* Here, Officer Villasana's testimony regarding the circumstances surrounding his stop of the vehicle are undisputed. Because the trial court's ability to determine reasonableness of the traffic stop is no better than ours, we review the trial court's ruling on the motion to suppress *de novo*. *See id.*

 Generally, an investigative detention is justified under both the state and federal constitutions if the officer, based on specific and articulable facts, reasonably surmises that the detained person may be associated with a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968); *Davis v. State*, 829 S.W.2d 218, 219 (Tex.Crim.App.1992). Officers act reasonably in stopping a vehicle they observe make a traffic violation. *See, e.g., Strickland v. State*, 923 S.W.2d 617, 620 (Tex.App.—Houston [1st Dist.] 1995, no pet.); *Graham v. State*, 893 S.W.2d 4, 7 (Tex.App.—Dallas 1994, no pet.). The failure to use a turn signal is a traffic violation. TEX. TRANSP. CODE ANN. § 545.104

---

4. Officer Pena brought the duffel bags that housed the marijuana to court.

(Vernon 1999). During a valid traffic stop, a police officer has the authority to order a passenger to step out of the car. *See Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim.App.1997) (" 'We therefore hold that an officer making a traffic stop may order passengers to get out of the car pending completion of the stop.' ") (quoting *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882 (1997)). During a traffic stop, the officer has a right to check for outstanding warrants and request (1) a driver's license; (2) insurance papers; and (3) identification. *Davis v. State*, 947 S.W.2d 240, 245 & n. 6 (Tex.Crim.App.1997). Additionally, the officer may ask about the driver's destination and purpose of travel during a valid detention, although neither the driver nor the passenger is compelled to answer these questions. *Powell v. State*, 5 S.W.3d 369, 377 (Tex.App.—Texarkana 1999, pet. ref'd), *cert. denied, Powell v. Texas*, 529 U.S. 1116, 120 S.Ct. 1976 (2000).

 Officer Villasana testified that the driver of the car in which appellant was a passenger changed lanes without signaling. Therefore, the officers were justified in stopping the vehicle for a traffic violation.[5] Because appellant was a passenger in an automobile lawfully stopped for a traffic violation, Officer Villasana was justified in asking appellant to step out of the car and in detaining him for investigative purposes. *See Josey v. State*, 981 S.W.2d 831, 837–38 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd). Officer Villasana's observation, that appellant became nervous and wide-eyed, occurred during the course of asking appellant where he had been, where he was from, and where he was going. Appellant responded that he had been in town since the day before, that he had stayed at a friend's house, that he did not know where he stayed the night before, that he had been with his friends earlier that day, and that he was going to an auto parts store. In following up on those responses, Officer Villasana advised appellant that he had been watching appellant and knew he was at a warehouse earlier. Because appellant's demeanor response was elicited in the course of a valid traffic stop, we find that the trial court did not err in allowing Officer Villasana to testify regarding appellant's nervous demeanor during that traffic stop.

Appellant's second point of error is overruled.

## V. FAILURE TO APPLY THE LAW OF PARTIES

 In his third point of error, appellant complains that the trial court erred by refusing to apply the law of parties to the facts of this case in the application paragraph of the jury instruction. Specifically, appellant contends that the instruction failed to set forth whether appellant solicited, encouraged, directed, aided, or attempted to aid another's commission of the offense, as raised by the evidence. Appellant appears to be complaining that the trial court erred in denying his request for a more fact-specific application paragraph regarding the law of parties.

At trial, appellant's trial (and appellate) counsel objected to the jury charge as follows:

> Counsel: On the charge on the parties, we would ask that it be more specifically affixed to the facts; and we

---

5. Officer Pena testified during the motion to suppress hearing that, after the traffic stop, appellant was detained "in regards to a narcotics investigation because of the positive alert" from the dog. Where an officer makes a valid traffic stop, the existence of another motive for the stop is irrelevant because the prohibition against pretextual stops has been abandoned in Texas. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex.Crim.App.1992).

would object to it as it is stated in the—

Court: You need to have a request, Mr. Pink.

Counsel: Ma'am?

Court: You need to file a request with the Court. I'm giving you every opportunity to do this, sir; you're unprepared to appear. I gave you a copy of this charge yesterday afternoon. You were late today. You need to tell the Court what you want. I'm not a mind reader, sir.

Counsel: What I'm saying, Your Honor, is simply that the charge that I got today is the first time that the charge had law of parties on it.

Court: I'm asking you what you're requesting?

Counsel: I'm merely objecting to the Court's charge as it is stated. And I'm asking that the application paragraph, as far as my client is concerned, be more specific to the facts that have been alleged—or evidence that has been presented as it relates to the indictment.

Court: And I'm asking you what specifically are you requesting? There is an application in relation to the alleged co-defendants.

Counsel: *We're going to object to the— to the name of Officer Fernando Salvadar being part of the charge as far as parties is concerned .... [because he was] [n]ot charged or indicted.*

(emphasis added).

▆▆▆ "If a defendant desires a more explicit application of a particular method

of acting as a party, it is his burden to request such or object to the charge." *Chatman v. State*, 846 S.W.2d 329, 332 (Tex.Crim.App.1993). Absent such an objection or request, the trial court does not err by submitting a general application of the law of parties to the facts. *Id.* Because the record contains no such request or objection, this point has not been preserved for our review. *See* Tex.R.App. P. 33.1.

Appellant's third point of error is overruled.

## VI. Special Charge Instruction

▆▆▆ In his fourth point of error, appellant complains that the trial court erred by failing to instruct the jury on a special charge raised by the evidence concerning illegal arrest. We interpret appellant's complaint as one objecting to the trial court's failure to instruct the jury not to consider evidence it believed may have been obtained as a result of an illegal arrest, under Texas Code of Criminal Procedure article 38.23. *See* Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2001).[6]

▆▆▆ Appellant was entitled to an article 38.23 instruction only if the evidence raised a fact issue concerning whether the evidence was obtained in violation of the U.S. Constitution, Texas Constitution, or any of its laws. *Bell v. State*, 938 S.W.2d 35, 48 (Tex.Crim.App.1996). When the essential facts concerning a search or arrest are not in dispute, the legality of the

---

**6.** Article 38.23(a) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused in the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the Article, then and in such event, the jury shall disregard any such evidence so obtained. *Id.*

search or arrest is a question of law, not fact. *Campbell v. State,* 492 S.W.2d 956, 958 (Tex.Crim.App.1973).

■ Appellant does not refer us to any evidence in the record raising a factual dispute as to how the evidence was obtained. Appellant points to no inconsistencies in the testimony. Instead, he merely asserts on appeal that, "[a]s raised throughout the trial, the Appellant's arrest was baseless, without probable cause, and without a warrant .... [and founded upon] the baseless hunch held by police agents of the State...." Accordingly, we find the trial court did not err by omitting an article 38.23 instruction. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23.

Appellant's fourth point of error is overruled.

### VII. IMPROPER STATEMENT BY TRIAL COURT

■ In his fifth and final point of error, appellant contends the trial court erred by failing to instruct the jury to disregard its comment during voir dire that the range of punishment was 25 years to life in prison. Appellant contends this comment was improper because it instructed the venire on a punishment range applicable only if the State proved the two enhancement paragraphs. Appellant argues that the trial court (1) continued causing irreparable harm and unduly prejudiced appellant; (2) violated appellant's right to fundamental fairness; and (3) conveyed its opinion of the case before return of the verdict in violation of Texas Code of Criminal Procedure article 38.05. Appellant contends the trial court egregiously erred and compounded that error by failing to instruct the jury to disregard its comments.

In discussing the jury's duty to assess a fair punishment, the trial court stated during voir dire that "[t]he range of punishment in this case as it's indicted is a minimum of 25 years in prison, all the way up to life in prison." Moments later, defense counsel asked to approach the bench and requested that the trial court use another method to explain the range of punishment to the jury. He correctly argued that the range of punishment the court just gave the veniremembers did not apply unless the State proved the two enhancement paragraphs. The State joined appellant in requesting that the trial court explain to the venire the punishment range for the underlying offense. The trial court then further explained to the venire the punishment ranges that would apply if the State proved one, both, or neither of the enhancements.

The trial court explained that for the underlying offense of possession of marijuana (without proof of either enhancement), the punishment ranged from two to ten years' confinement and a fine not to exceed $10,000. The trial court further explained that if the jury found the defendant had a prior felony conviction, the punishment range would be "mandated different" at five years to life in prison. Finally, the trial court explained that if the State proved appellant was convicted of a second felony offense after his release from prison, the defendant would be deemed a "habitual offender" and would face punishment ranging from twenty-five years to life in prison. The court further explained that "there could be different ranges of punishment depending on the facts of the case .... [and that] really the minimum in this case could be two and in some cases it could go up to life."

Appellant contends that even after the trial court tried to correct the previous improper sentencing guidelines, the venire appeared confused and unable to follow the court's attempt to clarify its instruc-

tions. For instance, after the court's more full explanation of the possible punishment ranges, one veniremember asked the court, "Were you fixing that up for a reason or would you have done that anyway?" In response, the court explained that it was trying to simplify the instructions to avoid confusion:

> I try to keep it as simple as I can. Because sometimes giving too much information just confuses people. And I just try to do a general voir dire on general information. And then I let the attorneys do specifics. Sometimes they request that I be more specific....

A veniremember [7] then asked, "So are you saying in this particular case, if we're chosen to be a veniremember, that we would have the range from 2 years to life or will we go back to your original statement, 25 to life?" The court responded that it would depend on what the facts show and that the range may be "2 to 20 ... 5 to life or ... 25 to life...." Another veniremember asked, "I'm just curious about the huge difference. There's a huge difference between 25 to life and two years. Can you explain why you started at 25 years?" The court responded not only that it was trying to give general information but also that it wanted to "let you get some feel for what you wanted to do, what your thoughts were, knowing that the attorneys would go back and cover issues."

During a bench conference that followed the veniremembers' questions, defense counsel asked that the panel be struck "because of the statements made by different panel members, as to your first conversations about 25 years and how a case was pled...." He argued the trial court's comments had predisposed the veniremembers to believe the defendant had a

criminal history and argued that the veniremembers indicated 25 years was "imprinted" on their minds. He also argued that "the damage has been done," the panel had been contaminated, and defendant could not receive a fair and impartial trial. The trial court nevertheless denied appellant's motion to strike the panel.

■ The State responds that appellant waived this issue for failure to timely object to the court's initial comment that the range of punishment was 25 years' to life imprisonment. To preserve error for appellate review, counsel must make a timely and specific objection. Tex.R.App. P. 33.1; *Janecka v. State*, 823 S.W.2d 232, 243 (Tex. Crim.App.1990). Absent such objection, error is waived unless it is so egregious that the failure to object does not waive the error. *Janecka*, 823 S.W.2d at 243 n. 2 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). Here, appellant did not object to the court's allegedly prejudicial comment. Instead, he merely asked the trial court to better explain the punishment range, which was done, and then moved to strike the jury. Moreover, he did not request that the court instruct the jury to disregard it. Accordingly, we find that appellant has not preserved this complaint for appellate review. *See* Tex. R.App. P. 33.1; *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996).

Appellant's fifth point of error is overruled.

The judgment of the trial court is affirmed.

---

**7.** It is unclear from the record whether this was the same veniremember who asked the

first question.