Affirmed and Opinion filed November 23, 2005









Affirmed
and Opinion filed November 23, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-04-00730-CR

____________

 

KENNETH CARL
BILSKI,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 21st
District Court

Washington County, Texas

Trial Court Cause No. 13,959

 



 

O P I N I O N








Appellant Kenneth Carl Bilski appeals his
conviction for possession of less than one gram of cocaine.[1]  In seven points of error, appellant alleges
that (1) the evidence is legally and factually insufficient to support a guilty
verdict; (2) appellant=s right to counsel was violated because
his waiver was involuntary; (3) the evidence is insufficient to support the
trial court=s finding that appellant knowingly and
intelligently waived his right to counsel; (4) appellant was egregiously harmed
when the trial court improperly instructed the jury at the guilt/innocence
phase; (5) the trial court erred in admitting extraneous offense evidence; (6)
appellant was egregiously harmed by the trial court=s failure to
properly instruct the jury at the punishment phase; and (7) the evidence is
legally insufficient to support the enhancement of appellant=s punishment.

Background

In March 2003, the grand jury indicted
appellant for knowingly and intentionally possessing less than one gram of
cocaine.  The indictment also alleged
that appellant had been convicted of two prior felonies: aggravated assault in
1990 and driving while intoxicated in 1999. 


Appellant=s case was called
for trial on July 6, 2004.  Before voir
dire began, appellant=s counsel, Conrad Day, notified the court
that although Day had been appointed about a year earlier, appellant no longer
wanted Day to represent him.  Appellant
felt that the motions Day had filed had been ineffective and was displeased
that Day had suggested a guilty plea. 
Day told the court that he had explained that if appellant wished to
represent himself, he would have to sign a waiver.  Appellant then asked the court to set a bond
so that he could travel to Houston to hire his own attorney. He stated that he
had spoken to a Houston attorney about four months earlier.  After noting that appellant had had ample
opportunity to resolve these issues before trial, the court refused to postpone
the proceedings.  Appellant responded: AAll I can say is I=ll just have to
represent myself.  I=m not a lawyer
though.@








The court then advised appellant of the
waiver requirement and asked if appellant understood the charges against
him.  Appellant confirmed that he
understood that he was charged with the AState jail felony@ of possession of
a controlled substance and that the indictment also alleged two prior felony
convictions.  The court explained how
appellant=s sentence would be affected if a court or
jury found those allegations to be true, and appellant stated that he
understood.[2]  When the court questioned appellant about his
education and experience, appellant stated that he had attended school through
the ninth grade, had earned his GED (General Educational Development), and had
partially represented himself in a prior civil suit in federal court.  Appellant also stated that he understood that
he was required to abide by the rules of evidence and that he might make costly
mistakes without counsel=s assistance.  At the end of this questioning, when the
court asked whether appellant wanted Day to represent him or whether appellant
wished to represent himself, appellant reiterated: AI will represent
myself.@  Appellant also declined to use Day as standby
counsel, stating: AHonestly, I would rather take the bull by
the horns and do what I can.@

After appellant signed the waiver of his
right to counsel, the court announced that it was required to advise appellant
of Athe dangers and
disadvantages@ of representing himself.  Specifically, the court told appellant: AI=ve tried to tell
you that you might make mistakes and that you=re not qualified
to do this and I highly recommend that you let Mr. Day continue as your lawyer
but if you chose [sic] to you have a right to waive counsel.@  After this admonishment, appellant stated
that he had no questions and that he had voluntarily signed the waiver of
counsel.  Appellant also stated that he
understood that he could ask the court to reappoint Day as his standby counsel
at any time, but he again declined such assistance.  Appellant also stated that he understood that
the court would not give him advice during the trial and would hold appellant
to the same standards as a licensed attorney.

At the prosecutor=s request, the
court informed appellant that it would not stop the trial to appoint  a new lawyer. 
Before withdrawing as counsel, Day advised appellant not to represent
himself and opined that the indictment legitimately enhanced appellant=s potential
sentence.  Day also gave appellant his
trial notebook. 








At trial, appellant=s mother, Dorothy
Bilski, testified that when she arrived home from work, she saw appellant
sitting in the carport.[3]  According to his mother, appellant appeared
very weak and nauseated and told her that he had a bad headache.  Later that evening, appellant=s mother overheard
a telephone conversation during which appellant asked someone Ato bring him some
pain reliever.@ 
Three people arrived at the house apparently in response to appellant=s request.   After they left, appellant=s mother checked
on appellant and found him gagging over the sink.  When she checked on him a second time,
appellant=s mother realized that appellant Awas fixing to give
himself an injection@ because he Ahad his arm laid
out and he had a needle.@  

Appellant=s mother testified
that she grabbed the syringe out of appellant=s hand and hid it
in a bowl in her kitchen cabinet.  She
also testified that appellant followed her into the  house and asked for the syringe.  Appellant=s mother called
911 and when officers arrived, she gave the syringe to deputy Brad Kuecker.  Appellant=s mother testified
that the syringe was not hers and stated that she had acted to save her son=s life. 

Kuecker arrested appellant for possession
of a controlled substance after a field analysis revealed that the syringe
contained cocaine.  Narcotics officer
Chris Jackson, who assisted Kuecker in arresting appellant, testified that the
crime lab later confirmed that there were .21 grams of cocaine in the syringe.[4]  On cross-examination, appellant asked his
mother whether Athe officer went over there and arrested
me for something you handed him,@ to which she
responded affirmatively.  Kuecker also
testified that he did not take the syringe directly from appellant and that when he asked appellant
who the syringe belonged to, appellant did not answer. 
Kuecker
also testified that at the time of the arrest, appellant was Asweating very
badly and seemed to be very nervous,@ that he had red
bloodshot eyes, and that there was Aa strong odor of
alcoholic beverage coming from him.@ 








On cross-examination, appellant also asked
his mother why the officers had arrested him. 
When his mother replied that appellant had been on parole at the time,
appellant objected that Athe fact that she has brought up my
priors, the fact that I was on parole@ was
irrelevant.  The court overruled
appellant=s objection.  On direct examination, Kuecker also testified
that he had been aware of appellant=s prior
convictions for possession of a controlled substance.  When the prosecutor asked whether this
knowledge had influenced him in arresting appellant, Kuecker responded
affirmatively.  When questioned by
appellant on re-cross-examination, Kuecker testified that appellant had also
told him that he Ahad been to the pen three times.@

Appellant testified in his own defense
after assuring the court that he understood that he had a right not to testify
and that the prosecution could cross-examine him if he chose to testify.  Appellant claimed that the syringe was not
his and repeatedly stated that he was not in possession of the cocaine at the
time of his arrest.  Appellant also
asserted that his mother was not a credible witness.  On cross-examination, appellant admitted that
he had told the venire persons that he had been to the penitentiary twice,
although he had actually been convicted of a felony offense four times.  When asked about his decision to represent
himself, appellant testified:  AI was in the
intention [sic] that we had 43 jurors out there and you=re going to take
this or represent yourself.  So I=m in betweenBI=m stuck in between
a rock and a hard spot and I=m doing the best I
can.@  Appellant also claimed that AI fired a person
that was assigned to me, because in my heart I didn=t feel he was a
lawyer.  He showed no defense to
representation of me or nothing.@

The jury found appellant guilty of
possession of a controlled substance.  At
the punishment phase, appellant pleaded true to both allegations in the
enhancement paragraph of the indictment. 
The jury assessed appellant=s punishment at
eight years= confinement in the Institutional Division
of the Texas Department of Criminal Justice and a $2,000 fine.

 

 








Legal and Factual Sufficiency

In his first point of error, appellant
alleges that the evidence is legally and factually insufficient to support a
guilty verdict.  Specifically, appellant
argues that the only incriminating evidence is his mother=s testimony, which
he characterizes as uncorroborated accomplice witness testimony.  We find that appellant=s mother=s testimony does
not constitute accomplice witness testimony and that the evidence is both
legally and factually sufficient to support a verdict that appellant was in
possession of a controlled substance.

In evaluating the legal sufficiency of the evidence, we must
view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).  This standard of review applies to cases
involving both direct and circumstantial evidence.  King v. State, 895 S.W.2d 701, 703
(Tex. Crim. App. 1995).  Although we
consider all evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the jury. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  The jury is the exclusive judge of the
credibility of witnesses and of the weight to be given their testimony, and it
is the exclusive province of the jury to reconcile conflicts in the
evidence.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000).








In a factual sufficiency review, we must view all the
evidence in a neutral light and determine whether the jury was rationally
justified in finding guilt beyond a reasonable doubt.  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  Evidence is
factually insufficient if, when considered by itself, the evidence supporting
the verdict is too weak to support a finding of guilt beyond a reasonable doubt
and thus renders the conviction clearly wrong and manifestly unjust.  Id. at 85; Vasquez, 67 S.W.3d
at 236.  Alternatively, evidence is
factually insufficient if the evidence contrary to the verdict is strong enough
that the beyond-a-reasonable-doubt standard cannot be met, even if evidence
supporting guilt outweighs the evidence to the contrary.  Zuniga, 144 S.W.3d at 484.  Again, the reviewing court may not substitute
its own judgment for that of the jury and may not intrude upon the jury=s role as the sole
judge of the weight and credibility of witness testimony.  Vasquez, 67 S.W.3d at 236.

To obtain a conviction for possession of a
controlled substance in this case, the State was required to prove beyond a
reasonable doubt that appellant knowingly or intentionally possessed less than
one gram of cocaine.  Tex. Health & Safety Code Ann. _ 481.102(3)(D) (Vernon Supp. 2005),
' 481.115 (Vernon
2003).  In any possession case, the State
must prove that the defendant exercised 
actual care, custody, control, or management over the contraband and
that the defendant knew that the object he or she possessed was
contraband.  Villareal v. State,
116 S.W.3d 74, 79 (Tex. App.CHouston [14th
Dist.] 2001, no pet.) (citing Brown v. State, 911 S.W.2d 744, 747 (Tex.
Crim. App. 1995)).  Evidence that
affirmatively links the defendant to the contraband suffices as proof that he
or she possessed it knowingly.  Id.  This evidence may be direct or
circumstantial, and it must establish that the defendant=s connection with
the drug was more than fortuitous.  Id.  

When a defendant is not in exclusive
control or possession of the place where the contraband is found, the evidence
must affirmatively link the accused to the contraband in such a manner and to
such an extent that a reasonable inference may arise that the defendant knew of
the contraband=s existence and that he or she exercised
control over it.  Villareal, 116
S.W.3d at 79 (citing Porter v. State, 873 S.W.2d 729, 732 (Tex. App.CDallas 1994, pet.
ref=d)).  Courts do not use a rigid formula to determine
whether sufficient affirmative links exist; rather, affirmative links are
established by a totality of the circumstances test.  Id. 








Viewing the evidence in the light most
favorable to the verdict, we find that the evidence is legally sufficient
because there are affirmative links connecting appellant to the cocaine.  A field test revealed and lab tests later
confirmed that the syringe contained cocaine. 
Appellant=s mother testified that she took the
syringe away from appellant in the utility room, which was a space
predominately occupied by appellant. Officers also found a white substance in a
plastic bag in the same room.  Appellant=s mother also
testified that shortly before she saw appellant with the syringe, she overheard
a phone call during which appellant asked someone to bring him some Apain reliever.@  Appellant=s mother denied
ownership of the syringe and testified that she had called 911 in order to save
her son=s life.   Officer Kuecker testified that appellant
seemed nervous and was sweating when the police arrived.  The totality of these circumstances suggests
that appellant=s connection with the cocaine was more
than fortuitous; accordingly, we find that the evidence is legally sufficient
to support appellant=s conviction beyond a reasonable doubt.

Furthermore, viewing the evidence in a
neutral light, we find that it is factually sufficient to support appellant=s conviction.  Although appellant denied that the syringe
belonged to him, as the sole judge of witness credibility, the jury was free to
disbelieve his testimony.  Similarly,
although appellant=s mother was in possession of the syringe
when police arrived, she claimed that she had taken it away from her son and
called 911.  As the sole judge of witness
credibility and weight of testimony, the jury was free to believe this
explanation despite appellant=s assertion that
his mother was not credible.  Finally,
signs that appellant may have been intoxicated do not negate the facts that
appellant=s mother overheard her son=s request for Apain reliever@ shortly before
she found the syringe and that police found a white substance in a bag in
appellant=s room. 
Thus, we find the evidence sufficient to support appellant=s conviction
beyond a reasonable doubt.








Appellant argues that the evidence is
legally insufficient because his mother=s  testimony constitutes uncorroborated
accomplice witness testimony.[5]  We disagree. 
A person  is an accomplice if he
or she participated before, during, or after the crime and could be prosecuted
for the same or lesser included offense as the defendant.  Medina v. State, 7 S.W.3d 633, 641
(Tex. Crim. App. 1999); Blake v. State, 971 S.W.2d 451, 454-55 (Tex.
Crim. App. 1998).  This requires that
there be sufficient evidence tending to connect the accomplice to the crime as
a blameworthy participant.  Blake,
971 S.W.2d at 455.  A person who is
merely present at the scene of the offense is not an accomplice; an affirmative
act or omission is required.  Id.
at 454.

The evidence does not suggest that
appellant=s mother was a blameworthy participant in
the offense.  Although appellant=s mother, not
appellant, was in exclusive possession of the syringe when police arrived, she
voluntarily called 911 and immediately gave the syringe to Officer Kuecker upon
his arrival.  These actions appear
consistent with appellant=s mother=s assertion that
the syringe was not hers and that she temporarily confiscated it out of concern
for her son.

Alternatively, appellant argues that his
mother was an informant within the meaning of Texas Code of Criminal Procedure
Article 38.141, and therefore her uncorroborated testimony is insufficient to
support a guilty verdict.  See Tex. Code Crim. Proc. Ann. art. 38.141
(Vernon 2005).  We also find this
argument unpersuasive.  Article 38.141(a)
provides: 

a defendant may
not be convicted of an offense under Chapter 481, Health and Safety Code, on
the testimony of a person who is not a licensed peace officer or a special
investigator but who is acting covertly on behalf of a law enforcement agency
or under the color of law enforcement unless the testimony is corroborated by
other evidence tending to connect the defendant with the offense committed.








Tex. Code Crim. Proc. Ann. art. 38.141.  When interpreting Article 38.141, courts look
to case law interpreting Article 38.14 because the two statutes are so
similarly worded.  Young v. State,
95 S.W.3d 448, 450 (Tex. App.CHouston [1st
Dist.] 2002, pet. ref=d). 
Courts have acknowledged that the purpose of the corroboration
requirement in Article 38.14 is to ensure that a conviction rests upon more
than just the testimony of an accomplice because an accomplice may have a
selfish incentive to be untruthful, such as to avoid or lessen punishment or to
shift the blame to another person.  Young,
95 S.W.3d at 451; Blake, 971 S.W.2d at 454; Cantelon v. State, 85
S.W.3d 457, 460 (Tex. App.CAustin 2002, no
pet.).  Similarly, courts have recognized
that confidential informants often work with police for self-interested reasons
and Agenerally have an
incentive or hope for personal gain,@ such as monetary
compensation or dismissal of pending charges. 
Cantelon, 85 S.W.3d at 460; see also Young, 95 S.W.3d at
451 (stating that Aconfidential informants may have
incentives . . . to shade their testimony in favor of the State in the hope
that they will be rewarded with greater leniency later on@).  Accordingly, courts have applied the same
corroboration standard to Article 38.141. 
Id.  

Appellant reasons that because police
obtained the same type of information from his mother as they often learn from
confidential informants, his mother also must be a confidential informant
subject to the corroboration standard. 
However,  the inherent
self-interest that makes accomplice and confidential informant testimony
potentially unreliable does not appear to exist in this case.  There is no evidence that appellant=s mother was
working with police prior to calling 911 or that she would somehow personally
benefit by reporting appellant=s cocaine
possession to the authorities. 
Therefore, because appellant=s mother was not
an informant within the meaning of the statute, her testimony did not need to
be corroborated.  Accordingly, we find
that the evidence is both legally and factually sufficient to support appellant=s conviction
beyond a reasonable doubt and overrule appellant=s first point of
error.

Waiver of Right to Counsel

In his second and third points of error,
appellant contends that his right to counsel was violated because his waiver of
counsel was involuntary, and the evidence is insufficient to support a finding
that he knowingly and intelligently waived that right.  We disagree.








A defendant has a constitutional right to
proceed without the assistance of counsel when he or she voluntarily and
intelligently elects to do so.  Faretta
v. California, 422 U.S. 806, 818-20 (1975). 
A defendant=s waiver of counsel is made voluntarily if
it is uncoerced.  Collier v. State,
959 S.W.2d 621, 626 (Tex. Crim. App. 1997). 
The decision to proceed pro se is made knowingly and
intelligently if it is made with a full understanding of the right to counsel,
which is being abandoned, as well as the dangers and disadvantages of self-representation.  Faretta, 422 U.S. at 834-36.  This means that the trial court must
thoroughly admonish the defendant, so that the record reflects that the
defendant Aknows what he is doing and his choice is
made with eyes open.@  Id.  There is no specific formula that establishes
a knowing and intelligent waiver; however, a trial judge must actively assess a
defendant=s waiver of counsel.  Blankenship v. State, 673 S.W.2d 578,
583 (Tex. Crim. App. 1984).  Furthermore,
courts must indulge every reasonable presumption against the validity of such
waiver.  Jordan v. State, 571
S.W.2d 883, 884 (Tex. Crim. App. 1978).

We find that appellant=s waiver of the
right to counsel was voluntary and that the evidence is sufficient to establish
that appellant=s waiver was knowing and intelligent.  First, appellant=s waiver was
voluntary because he was not coerced into representing himself.  The week of the trial, appellant asked the
court to set a bond so that he could hire a new lawyer.  Appellant=s assigned counsel,
Conrad Day, informed the court that he and appellant had discussed the
possibility of appellant representing himself sometime during the previous
week.  The trial judge stated that he did
not want to delay the trial because the case was old and appellant had had
ample opportunity to resolve his problems with Day before the week of the
trial.  Accordingly, the court denied
appellant=s request for a bond but informed
appellant that he could either proceed to trial with Day as his counsel or he
could represent himself.  The trial court
asked twice whether appellant wished to use Day as standby counsel; however,
appellant refused to accept any aid from Day, asserting that he Awould rather take
the bull by the horns and do what I can.@  Thus, given the choice between representing
himself and having Day represent him in any capacity, appellant clearly chose
to represent himself.  Appellant had other
options available besides proceeding pro se;  therefore, we find that he voluntarily waived
the assistance of counsel.








Secondly, the evidence is sufficient to
support the trial judge=s finding that appellant waived his right
to counsel knowingly and intelligently because the trial court thoroughly
admonished appellant, and appellant confirmed that he understood the
admonishments.  In Collier, the
Court of Criminal Appeals examined the admonishments given by the trial court
and held that the defendant knowingly and intelligently waived his right to
counsel.  959 S.W.2d at 626.  In Collier, the trial court explained
that the defendant, who had earned his GED, was required to follow the rules of
evidence and procedure without any special consideration and warned that as a
result, the defendant might be disadvantaged at trial and in any consequent
appeal.  Id.  The trial court also explained the nature of
the charges against Collier, the fact that lesser included offenses might be
submitted to the jury, and the possible range of punishment.  Id. 
Finally, the court repeatedly tried to impress upon Collier Athe extreme
gravity of his request to proceed pro se and the likelihood that it was
a serious mistake.@  Id.  

In the instant case, in response to the
court=s questioning,
appellant acknowledged that he was charged with the state jail felony of
possession of a controlled substance and that the indictment contained two
enhancement paragraphs.  As in Collier,
the court explained the consequences of the enhancements, stating specifically
that if the enhancements were found to be true, the offense would constitute a
second-degree felony punishable by incarceration for two to twenty years and a
fine of up to $10,000.  The court also
cautioned that Ajust going to trial here on a State jail
felony there=s more risk to it than first meets the
eye.@  Like Collier, who had earned his GED,
appellant attended high school through the ninth grade,  earned his GED, and stated that he could read
and write English Afairly well.@  Appellant also told the court that he had
partially represented himself in a prior civil suit.  As in Collier, the court told
appellant that he must abide by all the legal rules applicable to criminal
cases and that the court would treat him as a qualified lawyer.  The court also warned appellant: A[Y]ou might
accidentally let some evidence come before the jury that could be kept out, and
Mr. Day is fully aware of what those rules are, and I=m afraid if you
represented yourself that you may not be able to understand all the rules of
evidence, etcetera, that apply and you could make a mistake that would cost
you.@  Finally, the court advised that there were Adangers and
disadvantages@ in proceeding pro se and told
appellant: AI=ve tried to tell
you that you might make some mistakes and that you=re not qualified
to do this and I highly recommend that you let Mr. Day continue as your lawyer.@  








The record reflects that the judge
thoroughly admonished appellant and that appellant understood the consequences
of proceeding to trial without the assistance of counsel.  Therefore, because we find that appellant
voluntarily waived his right to counsel and that the evidence is sufficient to
support a finding that appellant=s waiver was
knowing and intelligent, we overrule appellant=s second and third
points of error. 

Jury Instructions at Guilt/Innocence
Phase

In his fourth point of error, appellant
argues that the trial court erred in failing to instruct the jury that
appellant=s mother was an accomplice witness and in
failing to give a limiting instruction on the use of extraneous offense
evidence at the guilt/innocence phase. 
Appellant argues that these omissions caused him egregious harm. 

 In
examining a jury charge on appeal, an appellate court must first determine
whether any error exists.  Hutch v.
State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996).  Once an appellate court has determined that
error exists, the court must determine whether the error was sufficiently
harmful to require reversal.  Id.  at 170-71 (citing Arline v. State, 721
S.W.2d 348, 351 (Tex. Crim. App. 1986)). 
When, as in this case, there is no objection to an allegedly erroneous
jury charge, courts must evaluate the charge under an Aegregious harm@ standard.  Id. at 171 (citing Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). 

Consistent with our holding on appellant=s first point of
error, we find that the trial court did not err by failing to give an
instruction on accomplice testimony because appellant=s mother was not
an accomplice witness as a matter of law.

We also find that the trial court did not
err by failing to issue a limiting instruction on the use of extraneous offense
evidence.  Texas Rule of Evidence 105(a)
states: 

When evidence
which is admissible as to one party or for one purpose but not admissible as to
another party or for another purpose is admitted, the court, upon request,
shall restrict the evidence to its proper scope and instruct the jury
accordingly; but, in the absence of such request the court=s action in
admitting such evidence without limitation shall not be a ground for complaint
upon appeal.








Tex. R. Evid. 105(a) (Vernon
2003).  In other words, a trial court is
not required to give a limiting instruction if a defendant fails to request
such instruction at the first opportunity or Acontemporaneous
with the admission of the evidence@; without an
objection, the evidence becomes a part of the general evidence and may be
considered for all purposes.  Hammock
v. State, 46 S.W.3d 889, 895 (Tex. App.CHouston [1st
Dist.] 2001, no pet.); see also Arana v. State, 1 S.W.3d 824, 829
(Tex. App.CHouston [14th Dist.] 1999, pet. ref=d); Salvidar v.
State, 980 S.W.2d 475, 493 (Tex. App.CHouston [14th
Dist.] 1998, pet. ref=d.). 
Appellant did not request a limiting instruction when witnesses
testified about his prior offenses. 
Therefore, appellant was not entitled to a limiting instruction in the jury
charge and the trial court=s failure to give
one was not erroneous.  We overrule
appellant=s fourth point of error.

Extraneous Offense Evidence

In his fifth point of error, appellant
argues that the trial court erred when it admitted extraneous offense evidence
in the form of testimony regarding his prior convictions.  Specifically, appellant alleges that the
trial court improperly overruled his objection that Athe prosecution is
merely trying to prosecute on my prior convictions@ when the State
questioned Kuecker about appellant=s prior arrests
for possession of a controlled substance. 
Appellant also complains that the court improperly overruled his
objection that Athis statement shouldn=t be docketed due
to the fact that she has brought up my priors, that I was on parole, that that=s [sic] not
relevant to the case here@ when his mother stated on
cross-examination that the officers had arrested appellant because he had been
on parole.

We review a trial court=s decision on the
admissibility of evidence using an abuse of discretion standard.  Oveal v. State, 164 S.W.3d 735, 742
(Tex. App.CHouston [14th Dist.] 2005, pet. ref=d) (citing Montgomery
v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990)).  We must uphold the trial court=s ruling if it is
reasonably supported by the record and is correct according to any theory of
law applicable to the case.  Id.
(citing State v. Ross, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000)). 








We find that the trial court did not abuse
its discretion in admitting the testimony of Kuecker and appellant=s mother regarding
appellant=s prior offenses.  First, even before Kuecker testified for the
State, appellant invited testimony about his parole when he asked his mother on
cross-examination why he had been arrested. 
Appellant cannot invite such a response and then complain about it on
appeal.  See Ex Parte Guerrero,
521 S.W.2d 613, 614 (Tex. Crim. App. 1975). 
Secondly, Kuecker=s comments about appellant=s prior arrests
for possession of a controlled substance explained the context of appellant=s arrest.  A police officer may testify about the course
of events leading to the arrest of a suspect. 
Lee v. State, 29 S.W.3d 570, 578 (Tex. App.CDallas 2000, no
pet.).  Accordingly, we find that the
trial court did not abuse its discretion by admitting references to appellant=s prior convictions.[6]  We overrule appellant=s fifth point of
error.

Jury Instructions at Punishment
Phase

In his sixth point of error, appellant
alleges that he was egregiously harmed by the trial court=s failure to
properly instruct the jury at the punishment phase.  Specifically, appellant argues that the trial
court erred by failing to assign the burden of proof to the State regarding the
enhancement paragraphs and by failing to instruct that the jury must find that
the prior convictions were in sequence to impose a second-degree punishment
range.

We find no error in the jury
instructions.  Texas Penal Code Section
12.42(a)(2) provides: 

If it is shown on
the trial of a state jail felony punishable under Section 12.35(a) that the
defendant has previously been finally convicted of two felonies, and the second
previous felony conviction is for an offense that occurred subsequent to the
first previous conviction having become final, on conviction the defendant
shall be punished for a second-degree felony.








Tex. Pen. Code Ann. ' 12.42(a)(2)
(Vernon 2003).  The enhancement
paragraphs alleged that appellant had two prior felony convictions: one for
aggravated assault in 1990 and one for DWI in 1999.  Appellant pleaded true to both
enhancements.  The State has the burden
of proof on enhancements to show that a prior conviction was final and that the
defendant was the person previously convicted of that offense. Wilson v.
State, 671 S.W.2d 524, 525 (Tex. Crim. App. 1984).  However, if a defendant pleads true to the
enhancement paragraph, the State=s burden of proof
is satisfied.  Id.; see also
Mikel v. State, 167 S.W.3d 556, 559 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (stating that when a defendant pleads true to an
enhancement paragraph, the State is relieved of the burden of proving the
enhancements).[7]  Because appellant pleaded true to both
enhancements, the State met its burden of proof; therefore, instructions on the
burden of proof and the sequence of convictions were not necessary.  We find no error in the jury instructions and
overrule appellant=s sixth point of error. 

Enhancement of
Punishment

In his seventh and final point of error,
appellant argues that the evidence is legally insufficient to support the
enhancement of his punishment from a state jail felony to a second-degree
felony.[8]  Again, when a defendant pleads true to an
enhancement paragraph, the State=s burden has been
satisfied.  Wilson, 671 S.W.2d at
525;  Mikel, 167 S.W.3d 556 at
559.  Furthermore, after pleading true to
the enhancements, a defendant cannot later complain on appeal that the evidence
is insufficient.  Dinn v. State,
570 S.W.2d 910, 915 (Tex. Crim. App. 1978).








Appellant pleaded true to both enhancement
paragraphs; therefore, he cannot complain about the sufficiency of the
evidence.  Accordingly, we find that the
evidence is legally sufficient to support the enhancement of appellant=s sentence.  We overrule appellant=s final point of
error and affirm the judgment of the trial court.

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment
rendered and Opinion filed November 23, 2005.

Panel
consists of Chief Justice Hedges and Justices Yates and Anderson.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

_











[1]  Appellant was
sentenced to eight years= imprisonment in the Institutional Division of the
Texas Department of Criminal Justice and a $2,000 fine.





[2]  The trial
court stated: A[I]t=s my understanding that it would be a second degree
felony and the range of punishment would be not more than 20 years or less than
2 years in the penitentiary and a fine of up to $10,000.@  Regarding the
state jail felony, the court also told appellant that Athere=s more risk to it than meets the eye.@





[3]  Appellant
lived in a utility room adjacent to his mother=s
carport.  Appellant=s mother testified that she never locked her house and
that appellant could go inside whenever he wished.





[4]  Officers also found a plastic bag
containing a white substance on the floor of the room that appellant had been
occupying.





[5]  AA conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.@  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).





[6]  In his brief,
appellant also suggests that the probative value of the extraneous offense
evidence was substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury under Texas Rule of Evidence
403.  However, appellant did not object
on these grounds at trial; therefore, these issues were not preserved for
appellate review.  See Tex. R. App. P. 33.1(a)(1)(A)
(requiring objections to state grounds with sufficient specificity to make the
trial court aware of the complaint in order to preserve the issue for appeal).





[7]  A narrow
exception to this rule is when the record affirmatively reflects that a prior
conviction was not final at the time the subsequent offense was committed.  Mikel, 167 S.W.3d at 559.  There is no evidence  that appellant=s prior
convictions were not final when he committed the most recent offense;
therefore, this exception does not apply or affect our analysis in the instant
case. 





[8]  Appellant also
claims that the alleged insufficiency of the evidence violated his right to due
process of law under both the Texas and the United States Constitutions.  However, appellant neither cites authority to support this
position nor explains his reasoning.   Accordingly, we will not address this
argument.  See Tex. R. App. P. 38.1(h) (requiring an
appellant=s brief to contain a clear and concise argument for
the contentions made, with appropriate citations to authorities and to the
record).