NO. 07-08-0289-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 26, 2009
______________________________

CASEY NELSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 16TH DISTRICT COURT OF DENTON COUNTY;

NO. F-2006-1749-A; HONORABLE C. RIVERA-WORLEY, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
OPINION
          Appellant, Casey Nelson, was convicted of murder


 and sentenced to 25 years
confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ). It is from this judgment that appellant appeals. We affirm.
 
 
Factual and Procedural Background
          In 1999, while clearing land in Lewisville, Texas, Don Pittman found what he thought
was a human bone. After the local police department was notified and the bone was
determined to be of human origin, a complete search of the work site resulted in the
recovery of a partial human skeleton. Dr. Dana Austin, a forensic anthropologist for the
Tarrant County Medical Examiner’s Office was asked to assist. Once Dr. Austin examined
the remains, she determined that they belonged to a white or Hispanic male between 18
and 20 years of age. Later examination of the remains, by other members of the Tarrant
County Medical Examiner’s office, revealed that the deceased had suffered a perimortem
blunt force trauma to the head. The remains languished until 2006 when Detective Richard
Anders of the Lewisville Police Department received a phone call from Diana Schraer
about the skeletal remains. Mrs. Schraer advised Anders that her son, Santino Schraer,
had been missing since 1997. After obtaining the dental records of Schraer and a DNA
swab from Mrs. Schraer, the deceased was confirmed to be Santino Schraer.
          Once the name of Schraer was confirmed, Det. Anders began trying to determine
the facts surrounding the death of Schraer. By his investigation, Anders developed a
picture of a group of young people who loitered around the home of Danny Smith in
Lewisville. At this home, the young people were able to use drugs, drink alcohol, and
socialize as they wished without any adult supervision. In 1997, several members of this
group had a party at a motel in Lewisville. While attending the party, Schraer was
accompanied by, or met up with, a young 12 year old female. It was later alleged that,
while at the motel, Schraer had raped the 12 year old. When word of the alleged rape
spread around the group, members became incensed and a number of suggestions were
made regarding Schraer. No plan of action was decided on but several of the group
thought that Schraer should be, at least, beat up.
          On September 20, 1997, appellant, Marshall Mashburn, Schraer, Jeffrey Stealey,
Randall Horton, and Alisha Fowler were all gathered at Danny Smith’s back yard. While
Schraer was seated at a table, Mashburn approached from the rear with a three foot length
of metal pipe in his hands. Mashburn struck Schraer on the back of the head and Schraer
slumped forward. Immediately, appellant grabbed Schraer by the leg or legs and dragged
him out the driveway to a pickup truck. The testimony at trial indicated that appellant
loaded Schraer into the bed of the pickup truck. After Schraer was loaded in the truck,
Mashburn and Stealey got in the back of the truck while appellant got behind the wheel and
drove off. Appellant eventually drove to a field near Interstate 35 in Lewisville where the
body of Schraer was left to be found two years later.
          During the trial, testimony revealed that Schraer was not dead when he was placed
in the truck. Both Mashburn and Stealey beat him after he was placed in the truck. Horton
further testified that, when appellant, Mashburn, and Stealey left with the body, he and
Fowler left in a car and attempted to find appellant and the pickup. Having failed to find
the pickup, Horton and Fowler returned to the Smith house, where the initial assault took
place, and awaited the return of the pickup. When the pickup truck came back, Horton
went with the other three to wash out the bed of the pickup. A couple of days after the
attack on Schraer, Stealey took Horton to the site where the body was left.
          Prior to beginning the trial, appellant filed a motion for continuance alleging that
there were three out-of-state witnesses that were material to appellant’s defense. A further
motion alleged that there was an additional witness located out-of-state that was not
available for trial on the scheduled days. The trial court held a pre-trial hearing on the
motion and, after hearing the argument of counsel for both appellant and the State, denied
the motion for continuance and began the trial as scheduled. 
          At the trial, Horton and Stealey both testified against appellant. At the conclusion
of the testimony on guilt or innocence, appellant requested that the jury be charged that
both were accomplices as a matter of law. The trial court granted the requested charge
as to Stealey and denied the requested charge that Horton was an accomplice as a matter
of law. Appellant then requested that the jury be given a charge allowing the jury to find
Horton an accomplice as a matter of fact, which the court also denied. Appellant also
objected to the court’s charge for failure to properly apply the law of parties and criminal
responsibility to the facts of the case. The application paragraph of the court’s charge
applied the abstract law of parties and criminal responsibility in a general sense but not in
detail. The trial court overruled the objection.
          The jury found appellant guilty of murder and assessed his punishment at
confinement in the ID-TDCJ for 25 years. Appellant has appealed the judgment of the trial
court via six issues that allege: 1) the trial court committed error in not charging the jury that
Horton was an accomplice as a matter of law; 2) the trial court committed error in not
submitting an issue to the jury inquiring as to whether Horton was an accomplice as a
matter of fact; 3) the evidence was legally insufficient to support the jury verdict; 4) the
evidence was factually insufficient to support the jury verdict; 5) the trial court committed
error in denying appellant’s motion for continuance; and 6) the trial court committed error
in refusing the requested application paragraph for the law of parties as applied to
appellant. Disagreeing with appellant’s contentions, we will affirm the judgment of the trial
court.
Accomplice Witness
          By his first two issues, appellant contends that Horton was an accomplice as a
matter of law or, in the alternative, there was a fact question about Horton’s status as an
accomplice and the trial court should have submitted the issue to the jury. We review the
decision of the trial court denying a request for accomplice witness instructions under an
abuse of discretion standard. See Paredes v. State, 129 S.W.3d 530, 538 (Tex.Crim.App.
2004). A trial court abuses its discretion when its ruling is not within the zone of
reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App.
1990) (op. on reh’g). Horton’s status as an accomplice is critical because of how
accomplice witness testimony is viewed by the courts. Before a conviction can be based
on an accomplice’s testimony, the testimony must be corroborated by independent
evidence tending to connect the accused to the crime. Tex. Crim. Proc. Code Ann. art.
38.14 (Vernon 2005). An accomplice is someone who participates with the defendant
before, during, or after the commission of a crime and acts with the required culpable
mental state. See Druerey v. State, 225 S.W.3d 491, 498 (Tex.Crim.App. 2007). The
accomplice witness participation with the defendant must involve some affirmative act that
promotes the commission of the offense with which the defendant is charged. Id. Simply
having knowledge of the offense and not disclosing that information, or even trying to
conceal the information, does not render a witness an accomplice. Id. Finally, mere
presence at the scene does not render a witness an accomplice. Id. In the final analysis,
if the witness could not be prosecuted for the offense with which the defendant is charged,
or a lesser included offense, the witness is not an accomplice witness as a matter of law. 
Id. 
          We will first review the record to determine whether or not Horton was an
accomplice witness as a matter of law. The testimony at trial reveals that, prior to the date
of the death of Schraer, Horton had learned of the alleged rape by Schraer of the 12 year
old. Testimony indicated that the remainder of the group was informed of the alleged rape
either directly or indirectly from Horton. The testimony revealed that there was no
agreement about what to do to Schraer; at best there was an agreement that something
should be done. On the day of Schraer’s death, there had been no agreement and, in fact,
no one testified that killing him had been discussed. The trial testimony revealed that
Horton did not know in advance of Mashburn’s plan to strike Schraer with the pipe. After
Mashburn delivered the initial blow to Schraer’s head, appellant dragged Schraer down the
driveway and placed him in the back of a pickup truck. Horton was not involved in this. 
From that point, the testimony showed that appellant drove the truck while Mashburn and
Stealey were located in the bed of the pickup with Schraer. Horton was not there nor
involved with the continued beating of Schraer. The testimony at trial showed that Horton
and Fowler left the scene of the initial attack and attempted to follow appellant but, Horton
and Fowler never found appellant or the pickup. After Horton and Fowler returned to the
house, appellant, Mashburn, and Stealey came back without Schraer. After appellant and
the others returned to the house, there was a conversation that all of those there that
evening should keep quiet about what went on. The record reflects that following this
conversation, Horton went with appellant, Mashburn, and Stealey to a car wash where the
bed of the truck was thoroughly washed. Horton testified that, a couple of days after the
incident, he got Stealey to take him to the site where the body was and that Horton left
Schraer’s drivers license near the body. Horton testified that he remained quiet about the
offense until questioned about it by law enforcement.
          Appellant would have us conclude that Horton was an accomplice as a matter of law
because he was involved in the planning, execution, and covering up of the murder. 
Appellant’s analysis fails because the record demonstrates that the planning was
nonexistent. At best, Horton informed the group about the alleged rape and the group
thought something ought to be done about it. However, there was no plan and no
evidence of a plan. The evidence reflected that Horton did not participate in the execution
of the murder of Schraer. At best, Horton was present. Finally, the cover up involved the
possible destruction of evidence by washing the truck at a time when the murder was
already completed. 
          Based upon the record, it appears that Horton was present at the scene when the
first blow was struck, however, the testimony of other witnesses including the medical
examiner reveal that Schraer was not killed by that first blow. No one testified to any 
action by Horton until the vehicle returned without Schraer. Horton’s actions in assisting
in the washing out of the pickup truck bed might be described as tampering with physical
evidence in violation of section 37.09 of the Texas Penal Code. However, such conduct
does not make Horton an accomplice as a matter of law to Schraer’s murder. Horton’s
conduct in assisting in the washing of the pickup truck bed was not done with requisite
culpable mental state involved in the offense of Schraer’s murder as charged against
appellant. That is, Horton’s actions in assisting with the washing of the pickup truck were
not done with the intent to cause Schraer’s death nor with the knowledge that such action
would cause the death of the Schraer. Under these facts, Horton was not an accomplice
to murder as a matter of law. Id. 
          We next turn to the issue of whether the trial court erred when it failed to give the
jury an issue to determine whether or not Horton was an accomplice as a matter of fact. 
In reviewing the testimony regarding the actions of Horton, we are convinced that there
was not a fact issue raised as to his status as an accomplice. Paredes, 129 S.W.3d at
538-39. Therefore, the trial court did not abuse its discretion in denying appellant’s request
to submit the question to the jury regarding Horton’s status as an accomplice. Id. at 538. 
However, we note that even were we to determine the trial court erred by not inquiring of
the jury as to whether or not Horton was an accomplice, such error was harmless. This is
so because there is sufficient non-accomplice evidence existing tending to connect
appellant to the offense. See Biera v. State, 280 S.W.3d 388, 394 (Tex.App.–Amarillo
2008, pet. ref’d) (citing Herron v. State, 86 S.W.3d 621, 632 (Tex.Crim.App. 2002)). 
Specifically, appellant told his sister, Jolene Nelson Hershner, about his participation in the
murder and she testified before the jury. Further, appellant told Robert Tedford about his
participation in the offense. Alicia Fowler testified that, after Schraer was struck by
Mashburn, she heard the truck leave and appellant was with Mashburn and Stealey when
they returned in the pickup truck. 
          We have determined that Horton was not an accomplice witness as a matter of law
or fact. Additionally, we have determined that, if the trial court should have given the jury
an instruction on accomplice as a matter of fact, that the failure to so charge was harmless. 
Accordingly, appellant’s first and second issues are overruled.
Legal and Factual Sufficiency of the Evidence
          In appellant’s third and fourth issues he claims the evidence was neither legally nor
factually sufficient to sustain the jury’s verdict. Since appellant challenges both legal and
factual sufficiency, we are required to conduct an analysis of the legal sufficiency of the
evidence first and then, only if we find the evidence to be legally sufficient, do we analyze
the factual sufficiency of the evidence. See Clewis v. State, 922 S.W.2d 126, 133
(Tex.Crim.App. 1996).
          In assessing the legal sufficiency of the evidence, we review all the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133
S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). We measure the legal sufficiency
of the evidence against a hypothetically correct jury charge. See Malik v. State, 953
S.W.2d 234, 240 (Tex.Crim.App. 1997).
          When an appellant challenges the factual sufficiency of the evidence supporting his
conviction, the reviewing court must determine whether, considering all the evidence in a
neutral light, the jury was rationally justified in finding the appellant guilty beyond a
reasonable doubt. See Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). In
performing a factual sufficiency review, we must give deference to the fact finder’s
determinations if supported by evidence and may not order a new trial simply because we
may disagree with the verdict. See id. at 417. As an appellate court, we are not justified
in ordering a new trial unless there is some objective basis in the record demonstrating that
the great weight and preponderance of the evidence contradicts the jury’s verdict. See id. 
Additionally, an appellate opinion addressing factual sufficiency must include a discussion
of the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The Court of Criminal Appeals has
recently declared that when reviewing the evidence for factual sufficiency, the reviewing
court should measure the evidence in a neutral manner “against a hypothetically correct”
jury charge. Vega v. State, 267 S.W.3d 912, 915 (Tex.Crim.App. 2008) (citing Wooley v.
State, 273 S.W.3d 260, 268 (Tex.Crim.App. 2008)).
Legal Sufficiency Analysis
          Appellant contends that the evidence was legally insufficient to show that he had the
intent to promote or assist in the commission of the offense of murder. See Tex. Penal
Code Ann. § 7.02(a) (Vernon 2003). Therefore, according to appellant, the State failed to
prove that he was criminally responsible for the murder of Schraer. See Tex. Penal Code
Ann. § 7.01(a) (Vernon 2003).
          When we review the evidence we find the following: 1) appellant was in the
backyard at the time Mashburn first struck Schraer, 2) without any prompting from any
other participant, immediately after the blow was struck, appellant got to his feet and
grabbed Schraer by the leg or legs and dragged him to the pickup truck, 3) appellant
placed Schraer in the bed of the pickup truck, 4) appellant already had the keys to the
pickup truck, even though the truck belonged to Robert Tedford, 5) no one gave appellant
any instructions about where to take the body of Schraer, 6) appellant apparently picked
out the location where the body should be left, 7) appellant made inquiry about whether or
not Stealey could be trusted to keep his mouth shut or should he be eliminated, 8)
appellant admitted his participation in the crime to Robert Tedford, and 9) appellant
admitted his participation in the crime to his sister, Jolene Nelson Hershner. When we
review all of the above evidence in the light most favorable to the jury’s verdict, we cannot
say that the jury acted irrationally in finding that the appellant was guilty of the offense of
murder. Jackson, 443 U.S. at 319; Ross, 133 S.W.3d at 620. Accordingly, appellant’s
issue regarding the legal sufficiency of the evidence is overruled.
Factual Sufficiency Analysis
          When we review the above referenced evidence in a neutral light, we still find that
the evidence is such that a rational jury could have found appellant guilty of murder. 
Watson, 204 S.W.3d at 415. Appellant points to no specific evidence that would
undermine our confidence in the verdict returned by the jury. See Sims, 99 S.W.3d at 603. 
Therefore, appellant’s issue regarding the factual sufficiency of the evidence is overruled.
Motion for Continuance
          Appellant contends that the trial court committed reversible error when it denied
appellant’s subsequent motion for continuance filed on April 8, 2008. The trial court
conducted a hearing on the motion for continuance on April 9, 2008. Appellant’s motion
for continuance was based upon the declared necessity to obtain the attendance of three
out-of-state witnesses. In the motion, appellant asserted that the trial court had previously
found the three out-of-state witnesses’ testimony to be material and ordered subpoenas
for each to be issued by the court’s clerk. Appellant further alleges that the clerk of the
court had failed to issue the subpoenas and, therefore, the witnesses had not been served
and would not appear. Additionally, appellant alleged there was a fourth witness who was
going to be out of the country at the time of trial. Based upon these allegations, appellant
contended a continuance was required.
          We review the trial court’s denial of a motion for continuance under an abuse of
discretion standard. Gallo v. State, 239 S.W.3d 757, 764 (Tex.Crim.App. 2007). To
establish abuse of discretion, there must be a showing that the appellant was actually
prejudiced by the denial of the motion. Id. When the motion for continuance is based
upon an absent witness, appellant must show 1) that the appellant has exercised diligence
to procure the witness’s attendance, 2) that the witness is not absent by the procurement
or consent of the appellant, 3) that the motion is not made for delay, and 4) the facts
expected to be proved by the absent witness. See Tex. Code Crim. Proc. Ann. art. 29.06
(Vernon 2006); Harrison v. State, 187 S.W.3d 429, 434 (Tex.Crim.App. 2005). Further,
it must appear to the trial court that the facts which the absent witness would testify to are
material. Id. Finally, mere conclusions and general averments are not sufficient for the
trial court to determine their materiality. Harrison, 187 S.W.3d at 434.
          Appellant’s motion for continuance, dated April 8, 2008, complains about the
absence of three witnesses for whom out-of-state subpoenas had been ordered. However,
the April 8 motion never lists the names of these witnesses nor the name of the alleged
fourth witness. Appellant then filed a subsequent motion for continuance, dated April 10,
2008, complaining about the absence of three witnesses, Katherine Pyatt, Robbie Charles
Cordes, and Kenneth D. Ancicco. No attempt to explain why there were four witnesses
who were alleged to be material in the first motion and only three in the second motion filed
only two days later. Now on appeal, appellant appears to be contending that the only
action by the trial court that might be an abuse of discretion was the denial of the motion
for continuance based on the absence of witness Ancicco. Accordingly, we will address
only the motion for continuance as applied to the testimony of Ancicco. 
          The record reflects that appellant’s trial counsel did not seek to have Ancicco
subpoenaed as an out-of-state witness, rather, as appellant’s trial counsel explained in the 
subsequent motion for continuance, he was relying on the assurances of appellant’s former
attorney and the witness that Ancicco would come to Texas voluntarily. The failure to seek
a subpoena for the out-of-state witness, Ancicco, or to even bring the matter to the trial
court’s attention until April 10, 2008, does not demonstrate diligence on the part of
appellant. See Dewberry v. State, 4 S.W.3d 735, 756 (Tex.Crim.App. 1999). Further, as
to the question of the materiality of the proposed testimony of Ancicco, the record reflects
that, in Ancicco’s statement attached to the motion for continuance, the witness stated
Horton made the statement which would have contradicted his testimony at trial in July or
August 1996. The murder for which appellant was convicted occurred in September of
1997. Therefore, the trial court was correct in ruling that the testimony of Ancicco was not
material. For the reasons stated, appellant’s fifth issue is overruled.
Parties Charge
          Appellant’s final issue alleges that the trial court committed reversible error when
it denied appellant’s request for a more specific application of the law of parties, as
contained in the application paragraph of the court’s charge, to the facts of the case. The
charge in question contained a definition of the law of parties in the abstract portion of the
charge, to which appellant did not object. In the application paragraph, the charge of the
court stated the following:
Now, if you find from the evidence beyond a reasonable doubt that on or
about the 20th day of September, 1997, in Denton County, Texas, the
defendant, CASEY NELSON, did then and there, either as an individual or
as a party, intentionally or knowingly cause the death of an individual,
Santino Schraer, by striking Santino Schraer with a pipe; or did then and
there, either as an individual or as a party, with intent to cause serious bodily
injury to an individual . . . .
 
Appellant objected to this application paragraph requesting an instruction applying the facts
of the case to the general party instruction. No suggested charge was given to the trial
court, just an objection to the way the trial court had the paragraph worded.
          The review of an alleged charge error is a two step process. See Abdnor v. State,
871 S.W.2d 726, 731 (Tex.Crim.App. 1994). We must first determine whether error
occurred; and if so, we then evaluate the error to determine the degree of harm. Id. at 731-32. When evaluating the harm, the degree of harm requiring reversal is dependent upon
whether or not appellant objected to the charge. Id. A properly preserved error will call for
reversal as long as any harm is shown, that is to say, as long as the error is not harmless. 
Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh’g). If the error
is calculated to injure the rights of the defendant, then some harm has been demonstrated. 
Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 2006).
          The State contends that the objection of appellant to the charge was not specific
enough to properly preserve any error, if there was any. To support this proposition they
cite the court to Villareal v. State. See Villareal v. State, 116 S.W.3d 74, 82-83
(Tex.App.–Houston [14th Dist] 2001, no pet.). While the court in Villareal did find that the
objection in that case was not specific enough to preserve error, the court relied upon the
Texas Court of Criminal Appeals decision in Chatman v. State, 846 S.W.2d 329, 332
(Tex.Crim.App. 1993). Id. The problem is that in Chatman there was no objection to the
charge, in fact what the court said was, “If a defendant desires a more explicit application
of a particular method of acting as a party, it is his burden to request such or object to the
charge.” (emphasis added) Chatman, 846 S.W.2d at 332. Appellant did exactly what the
court in Chatman required. Accordingly, we must find that the objection was specific
enough to preserve error, if we assume, for the purposes of this opinion, that the failure to
give a more specific application paragraph was, in fact, error. 
          Since error was preserved, we must now examine the record in order to determine
if the error is “‘calculated to injure the rights of defendant,’ which means no more than that
there must be some harm to the accused from the error.” Almanza, 686 S.W.2d at 171. 
In short, when error has been properly preserved there will be a reversal unless the error
was harmless. Id. The degree of harm is examined in light of the entire jury charge, the
totality of the evidence, to include the contested issues and weight of probative evidence,
the argument of counsel and any other relevant factor revealed by the record. Id.
          Our review of the record reflects that the trial court gave a correct abstract definition
of the concepts of parties and criminal responsiblity. In fact, such was stated by counsel
for appellant during the charge conference. Further, the application paragraph contains
an application of the parties concept, albeit not as specifically as requested, to both of the
State’s theories of how the murder was committed. Therefore, the charge did properly
define party and how a person becomes criminally responsible for another’s conduct as
a party. Next, we note that the application paragraph uses the term party in applying the
conduct of appellant to the theories alleged by the State’s indictment. Thus, the jury was
given some guidance in applying the law of parties to the facts. The evidence was
consistent from the beginning that appellant’s conduct was integrally related to the ultimate
death of Schraer. All of the witnesses described appellant as having grabbed Schraer by
the leg or legs as soon as he slumped forward after being struck. The argument of the
State’s attorneys was consistent about the acts of appellant and their impact upon the
death of Schraer. Nothing in this record demonstrates how appellant was harmed in
anyway by the trial court’s failure to give the more specific charge in the application
paragraph. Therefore, we conclude the error was harmless. Id. Appellant’s sixth issue
is overruled.
Conclusion
          Having overruled appellant’s issues, the judgment of the trial court is affirmed. 
 
                                                                           Mackey K. Hancock

                                                                                     Justice







Publish.