

# NUMBER 13-19-00494-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ROBERT LEON ALLEN,                                                              Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 226th District Court
## of Bexar County, Texas.

# MEMORANDUM OPINION

**Before Justices Longoria, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Hinojosa**

Appellant Robert Leon Allen appeals his conviction for murder, a first-degree felony enhanced for punishment by a prior felony conviction. *See* TEX. PENAL CODE ANN. §§ 12.42(c)(1), 19.02. A jury found appellant guilty, and the trial court sentenced him to thirty-five years' imprisonment. In four issues, appellant argues the trial court erred in: (1)

prohibiting him from impeaching a witness; (2) sustaining the State's relevance objection to evidence that appellant was previously shot; (3) failing to charge the jury on the defense of necessity; and (4) failing to charge the jury on the accomplice witness rule. We affirm.

## I.   BACKGROUND[1]

A grand jury indicted appellant with causing the death of fifteen-year-old Noel Reyna by shooting Reyna with a firearm. The shooting occurred outside a Whataburger restaurant in an unincorporated area of Bexar County, Texas and was preceded by a fight between two teenage girls—appellant's sister M.C. and Reyna's friend L.A.[2]

### A.   Trial Testimony

On the night of the shooting, Reyna, L.A., and several friends arrived at Whataburger and waited at a table for their food. While seated, L.A. saw M.C. enter with a group of her friends. M.C.'s group used the restroom and exited the restaurant. L.A. and M.C. had previously fought each other on multiple occasions, and L.A. suspected tonight would be no different. L.A. called her adult cousin and requested that she come to the restaurant for support. L.A.'s cousin later arrived with her teenage daughter and goddaughter and joined L.A.'s group inside the restaurant.

Meanwhile, M.C. called appellant, her twenty-five-year-old brother, and requested that he come to the restaurant as well. According to M.C., "it's always the understanding

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] We use initials to refer to the minor witnesses to protect their privacy. *See* TEX. R. APP. P. 9.8 cmt. ("The rule [protecting the privacy for filed documents in civil cases] does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases."); *Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

every time I see [L.A.] that we're going to fight."

After getting their food, L.A.'s group exited to the parking lot, where they were met by M.C.'s group. According to multiple witnesses, appellant encouraged M.C. and L.A. to fight, saying to M.C., "I know you didn't call me up here for nothing," and "beat her up then." M.C. and L.A. began fighting in the parking lot, and members from both groups eventually joined the fight.

At some point during the altercation, Reyna attempted to break up a fight between two of the girls. Appellant then approached Reyna and slapped him in the face. The witnesses' accounts diverge on what occurred next. Three witnesses in M.C.'s group testified that Reyna pulled out a gun—either "cocking" the gun or aiming it at appellant. Two witnesses in L.A.'s group describe Reyna as adjusting his clothes or lifting his shirt, while hearing appellant say, "if you showed, you should use it." Another witness in L.A.'s group conceded on cross-examination that she told law enforcement on the night of the shooting that Reyna "flashed" his gun.

After confronting Reyna, appellant ran across the parking lot to a vehicle, which was measured to be at least 146 feet away, and retrieved an AK-47 semi-automatic rifle. Appellant then returned and fired multiple rounds at Reyna, which caused Reyna's death. Multiple witnesses saw a handgun near Reyna's body after he was shot. Responding officers recovered a Glock 9 mm pistol with a chambered round from under Reyna's body.

After shooting Reyna, appellant fled the scene in a vehicle. He later contacted his cousin Damien McKnight and asked that McKnight take his rifle to McKnight's house. McKnight agreed, and appellant placed the rifle wrapped in clothes in McKnight's vehicle.

3

McKnight stored the items at his residence, where they were later discovered by law enforcement during the execution of a search warrant.

## B.      J.S. Impeachment

Reyna's friend J.S., who was present the night of the shooting, acknowledged giving a statement to police. When presented with his statement by appellant's counsel, J.S. denied that the signature on the statement was his. Appellant's counsel proceeded to ask J.S. about various assertions contained in the written statement:

Q.    Did you tell the police officers that there was supposed to be a girl fight at the Whataburger that night?

A.    I didn't know there was supposed be a girl fight, but there was a girl fight.

. . . .

Q.    Okay. So my question is to you: Did you tell the police officers that night that the girls were supposed to fight some other girls at the Whataburger that night?

A.    That's—that's what it says, but I didn't like—I didn't know there was a girl fight, like I told you earlier.

Q.    Okay. So what you're telling this jury and me right now is that you didn't say that to the police officers?

A.    No, I didn't.

Q.    Okay.

A.    I might have said there was a girl fight, but I never said there was supposed to be a girl fight.

Q.    All right. During your statement to the police officers that night, did you—did you tell the police officers that [Reyna] jumped into the fight to break it up?

A.    No, I didn't say that.

4

. . . .

Q.  All right. Are you telling this jury that you did not tell the police officer that was taking your statement that [Reyna] jumped in to break—break up the girl fight?

A.  I did say that.

Q.  I can't—

A.  Yeah, I said that, that he broke up the fight.

. . . .

Q.  All right. In your statement, is it true or not true that you told the police officers that you saw [Reyna] pull out a gun?

A.  Untrue.

Q.  I'm sorry. What?

A.  Untrue.

. . . .

Q.  In your statement you mentioned that [Reyna] pulled out a gun at some point in time before he got shot. You mentioned that he pulled out a gun in your statement, the written statement that has your signature on it—or a signature on it, I'm sorry. Did you see that? Is that—is that in your statement?

A.  Yes, it's there.

Q.  All right. Did that actually happen? Did you see him pull out a gun?

A.  No, sir.

Q.  All right. Did you tell that to the police officer that night?

A.  I don't even remember. It was like two years ago.

Q.  So you don't remember if you told the police officer that [Reyna] pulled out a gun that night?

5

A.     Huh-uh. I don't remember him pointing no gun.

Appellant then called Dorian Prosser, an investigator with the Bexar County Sheriff's Department who took J.S.'s statement. Prosser testified that the statement was typed on his laptop. Prosser explained that 90% of the time, he has the witness type the statement. However, Prosser will type the statement for the witness if they are unable to do so because they are overwhelmed or illiterate. Prosser could not remember whether he or J.S. typed this particular statement, but he stated that he was 100% certain that J.S. signed the statement using a stylus.

Appellant's counsel then asked the following:

All right. Investigator, in reading the statement, if [J.S.] today is telling this jury that he did not tell you in his statement that the girls were supposed to fight and—

The State objected that the question called for hearsay, and appellant responded that the testimony was permissible impeachment evidence. During a bench conference, appellant's counsel explained the scope of his intended questioning:

[J.S.] said, I didn't say the girls were supposed to fight some other girls at the Whataburger, I just told him there was a fight amongst girls at the Whataburger. That's what he said. And in his statement he said, the girls were supposed to fight some other girls at the Whataburger.

. . . .

And then in his statement he says, [Reyna] pulled out a gun. He told that to this investigator.

The trial court sustained the State's objection, but it permitted appellant to make an offer of proof. Outside the presence of the jury, Prosser testified that the information contained in J.S.'s statement was provided by J.S.. Prosser agreed with appellant's

6

counsel that J.S.'s written statement contained the following information: "The girls were supposed to fight some other girls at the Whataburger" and "[Reyna] pulls out a gun."

## C.    Prior Shooting Incident

During M.C.'s testimony, the following colloquy occurred:

| | |
|---|---|
| [Appellant]: | Like you knew that your brother, [appellant], just eight days earlier, you know that— |
| [State]: | Objection, Your Honor; relevance. |
| [Appellant]: | I didn't ask the question yet, but I don't mind approaching on it if he has an objection on it.<br><br>. . . . |
| [State]: | He's going to try to elicit testimony that [appellant] was shot eight days before this, and that somehow that goes to his frame of mind to allow him to arm himself and bring an AK-47 to a Whataburger.<br><br>. . . . |
| THE COURT: | What's your question? |
| [Appellant]: | Well, the question, Your Honor, is she was there eight days earlier when [appellant] was on his porch—and we have the police department that—the detective we're subpoenaing—that he was standing on his porch, [a] car came by and he got shot in the leg twice by people eight days before. And so that does go toward that . . . [.] That does go towards his state of mind as far as fear of guns, fear of life. And she has personal knowledge because she was there. |

The trial court sustained the State's objection.

## D.    Jury Instruction & Verdict

The trial court instructed the jury on self-defense and defense of a third person, but it rejected appellant's request to include a necessity defense in the charge. The jury

returned a guilty verdict. This appeal followed.

## II.    EVIDENTIARY RULINGS

In his first two issues, appellant complains of the trial court's exclusion of evidence.

### A.    Standard of Review

We review a trial court's exclusion of evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion only if its decision lies outside the "zone of reasonable disagreement." *Id*. We must affirm the trial court on any legal theory supported by the record, even if the theory is not one on which the trial court itself relied. *See State v. Esparza*, 413 S.W.3d 81, 85 & n.17 (Tex. Crim. App. 2013); *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

### B.    Impeachment

In his first issue, appellant argues that the trial court abused its discretion in excluding the testimony of Prosser which would have established that J.S. made the following statements that were inconsistent with his trial testimony: (1) there was going to be a "girl fight" on the night in question; and (2) Reyna pulled out a gun during the confrontation with appellant. Appellant contends that this testimony was admissible impeachment evidence and that the trial court's ruling violated his constitutional right to confront and cross-examine witnesses.

#### 1.    Applicable Law

"Extrinsic evidence of a witness's prior inconsistent statement is not admissible unless the witness is first examined about the statement and fails to unequivocally admit making the statement." TEX. R. EVID. 613(a)(4). When examining a witness about the

witness's prior inconsistent statement, a party must first tell the witness (1) the contents of the statement, (2) the time and place of the statement, and (3) the person to whom the witness made the statement. *Id*. R. 613(a)(1). The witness must be given the opportunity to explain or deny the prior inconsistent statement. *Id*. R. 613(a)(3). If the admission is partial, qualified, or otherwise equivocal, or if the witness claims to not remember making the prior statement, then the statement is admissible for impeachment purposes. *See McGary v. State*, 750 S.W.2d 782, 786 & n.3 (Tex. Crim. App. 1988) (en banc); *Abdygapparova v. State*, 243 S.W.3d 191, 204 (Tex. App.—San Antonio 2007, pet. ref'd). However, if the witness admits making the statement, "then the witness has impeached himself, and no portion of the written statement is admissible." *McGary*, 750 S.W.2d at 787.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is generally inadmissible. *Id*. R. 802. Unless a witness's prior inconsistent statement falls within a hearsay exception, it is admissible only for purposes of impeachment and not as substantive evidence. *Miranda v. State*, 813 S.W.2d 724, 735 (Tex. App.—San Antonio 1991, pet. ref'd).

### 2.    Analysis

We agree with appellant that he established the proper predicate for the admission of the portions of the *written* statement which J.S. did not unequivocally admit to making. *See Ruth v. State*, 167 S.W.3d 560, 566 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) (concluding that a prior written statement was admissible for impeachment purposes because, "when questioned about the statement, [the witness] did not unequivocally

9

admit making it; rather she claimed she could not remember"). However, appellant never moved to admit the written statement. Instead, appellant attempted to question Prosser about J.S.'s statement. This method of impeachment would be proper only if appellant established that J.S. made an oral statement to Prosser. *See* TEX. R. EVID. 613(a)(1) (permitting impeachment of a witness with a prior inconsistent statement—"whether oral or written").

Prosser did not testify that J.S. provided an oral statement which Prosser later typed. Rather, Prosser could not recall how the statement was made, and he did not have any independent recollection of what J.S. might have said. While Prosser's testimony aided in authenticating the written statement, he possessed no independent knowledge of any oral statement made by J.S. In other words, the excluded testimony amounted to Prosser reading J.S.'s written statement, which was not in evidence. Under these circumstances, we conclude that the trial court did not abuse its discretion in granting the State's objections on the grounds of hearsay and improper impeachment. *See Gonzalez*, 544 S.W.3d at 370. We further conclude that the trial court's ruling did not violate appellant's right to confront witnesses. *See Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (explaining that the right to present evidence and to cross-examine witnesses under the Confrontation Clause does not generally conflict with the corresponding rights under state evidentiary rules).

Even if we were to find error, we would conclude that such error is harmless. Any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). In other words, non-constitutional

error requires reversal only if it affects the substantial rights of the accused. *Id*.; *see Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Proenza v. State*, 555 S.W.3d 389, 398 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Ellis v. State*, 517 S.W.3d 922, 931 (Tex. App.—Fort Worth 2017, no pet.). "We review the entire record to ascertain the effect or influence on the verdict of the error." *Proenza*, 555 S.W.3d at 398.

Here, appellant complains that he was unable to present evidence that J.S. saw Reyna pull out a gun and that J.S. knew ahead of time that there was going to be a "girl fight." With respect to the first statement, we note that it is undisputed that Reyna possessed a gun that night. The primary dispute is the extent to which Reyna exhibited the gun. However, witnesses on both sides of the altercation claimed he displayed the gun after appellant slapped Reyna. More importantly, while appellant did not move to admit the written statement, his counsel was able to impeach J.S. by having him confirm that the statement provides that J.S. saw Reyna pull out a gun. Appellant's counsel emphasized this point in his closing argument. Prosser's testimony reiterating what J.S.'s statement says is cumulative of the already admitted evidence. *See Seidule v. State*, 622 S.W.3d 480, 495 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Erroneously admitted evidence will not result in reversal when other evidence, or substantially similar evidence, was received without objection—either before or after the complained of ruling."). Further, we can perceive of no injurious effect from the exclusion of J.S.'s statement that "The girls were supposed to fight some other girls at the Whataburger." It is undisputed that

the fight was anticipated at some point that evening after M.C. and L.A. saw each other. The degree to which the fight was planned beforehand was not an issue central to appellant's defense.

For the foregoing reasons, we conclude that the exclusion of Prosser's testimony did not have a substantial and injurious effect or influence on the jury's verdict. *See* TEX. R. APP. P. 44.2(b); *Ellis*, 517 S.W.3d at 931. We overrule appellant's first issue.

## C.     Relevance

In his second issue, appellant argues that the trial court abused its discretion in sustaining the State's relevance objection to evidence that appellant was shot in the leg eight days prior to shooting Reyna. Appellant offered the evidence at trial to support that he acted in self-defense or in defense of a third person. In particular, appellant urged that the evidence was relevant to his "state of mind" and "fear of guns." Appellant further maintains the trial court's ruling violated his due process right to present a defense.

### 1.     Applicable Law

A person is justified in using deadly force against another when and to the degree the actor reasonably believes the deadly force is immediately necessary to protect the actor or a third person against the other's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. §§ 9.31(a), 9.32(a), 9.33. "Both self-defense and defense of a third person require that there be a reasonable belief in the immediate need to act." *Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016); *see* TEX. PENAL CODE ANN. §§ 9.32, 9.33. "[F]orce that is immediately necessary to protect oneself or another from a person's use of unlawful force is force that is needed at that moment—when a split second decision

12

is required." *Henley*, 493 S.W.3d at 90 (internal quotations omitted). A reasonable belief is "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(a)(42).

"Relevant evidence is generally admissible, irrelevant evidence is not." *Gonzalez*, 544 S.W.3d at 370 (citing TEX. R. EVID. 402). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401. "A 'fact of consequence' includes either an elemental fact or an evidentiary fact from which an elemental fact can be inferred." *Henley*, 493 S.W.3d at 84.

### 2. Analysis

We can perceive of only two scenarios in which a prior violent act committed against appellant would be relevant to his self-defense and defense of others claims. For instance, if the proffered evidence established that *Reyna* committed the prior violent acts, then such evidence would potentially be relevant to appellant's defense. *See Torres v. State*, 117 S.W.3d 891, 894 (Tex. Crim. App. 2003) (explaining that a defendant may introduce evidence of a *deceased's* violent character to support self-defense or specific acts of violence "to demonstrate the reasonableness of the defendant's fear of danger or to demonstrate that the deceased was the first aggressor"). Further, if the proffered evidence demonstrated that appellant mistakenly believed Reyna to be the person who shot him days prior, then such evidence could potentially be relevant to demonstrate appellant's apprehension of danger. *See Dyson v. State*, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984) (explaining that a mistaken belief about the identity of the complainant

13

or decedent can support a self-defense claim); *Henderson v. State*, 906 S.W.2d 589, 595 (Tex. App.—El Paso 1995, pet. ref'd) (same).

Here, the proffered evidence concerns an alleged violent act directed at appellant by an unknown person, eight days prior. Appellant provided no connection between the prior shooting and the events leading to Reyna's death. Absent such a connection, we conclude the trial court did not abuse its discretion in determining that the prior shooting was irrelevant to whether appellant reasonably believed that deadly force was immediately necessary to protect himself or others from Reyna. *See Gonzalez*, 544 S.W.3d at 370. We further conclude that the exclusion of this evidence did not violate appellant's due process right to present a defense. *See Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010) (explaining that the constitutional right to present a complete defense is qualified by the requirement that the evidence be relevant and not excluded by an established evidentiary rule). We overrule appellant's second issue.

### III.    JURY CHARGE

In his third and fourth issues, appellant alleges jury charge error.

### A.    Standard of Review & Applicable Law

The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). The trial court must instruct the jury on statutory defenses, affirmative defenses, and justifications whenever they are raised by the evidence. *Id*. at 208–09. "Raised by the evidence" means "there is some evidence, from any source, on each element of the defense that, if believed by the jury,

14

would support a rational inference that th[e] element is true." *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007).

When presented with an argument that a trial court committed jury-charge error, the reviewing court must conduct a two-step inquiry: (1) did an error occur; and (2) if so, did it cause harm that rises to the level of reversible error? *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (citing *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id*. (citing *Middleton*, 125 S.W.3d at 453). If a defendant preserves error, then he only has to show "some harm" to his rights. *Id*. (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If he fails to object, he must demonstrate "egregious harm." *Id*. (citing *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004)).

## B.    Necessity

In his third issue, appellant argues that the trial court erred in refusing his requested necessity instruction. The defense of necessity is based on the reasonable belief that the charged conduct was "immediately necessary to avoid imminent harm." TEX. PENAL CODE ANN. § 9.22(1). The Texas Penal Code broadly defines "harm" as "anything reasonably regarded as loss, disadvantage, or injury, including harm to another person in whose welfare the person affected is interested." *Id*. § 1.07(25). The defense of necessity is available unless "a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear." *Id*. § 9.22(3).

The jury charge in the instant case contained an instruction on the use of deadly

force in self-defense or in defense of third person. This Court has previously held that the use of deadly force does not preclude an instruction on necessity as a matter of law. *See Fox v. State,* No. 13-03-230-CR, 2006 WL 2521622, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2006, pet ref'd) (mem. op., not designated for publication). However, because this is a transfer case from the Fourth Court of Appeals, we "must decide the case in accordance with the precedent of [that court] under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court." TEX. R. APP. P. 41.3. In that regard, the Fourth Court of Appeals has held that when deadly force is the conduct that is immediately necessary, then the defense of necessity does not apply. *Striblin v. State*, No. 04-17-00826-CR, 2019 WL 1049233, at *4 (Tex. App.—San Antonio Mar. 6, 2019, pet. ref'd) (mem. op., not designated for publication). The court explained that "allowing an instruction on necessity when the appellant used deadly force and obtained a jury instruction on self-defense or defense of a third person would undermine the legislative purpose of only allowing deadly force to be used to prevent the immediate threat to one's life or the life of a third person or to prevent the commission of specific violent crimes." *Id*. Therefore, the court concluded that a legislative purpose for excluding the necessity defense plainly appears in §§ 9.32 and 9.33 of the penal code. *Id*. Applying the precedent of the Fourth Court of Appeals, we conclude that the trial court did not err in denying appellant's request for a necessity instruction. *See id*. We overrule appellant's third issue.

## C.    Accomplice Witness Rule

In his fourth issue, appellant argues that the trial court erred in failing to charge the

jury concerning the accomplice witness rule because McKnight, who testified at trial, was an accomplice "after the fact."

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. The purpose of the accomplice witness instruction is to remind the jury that it cannot use the accomplice's testimony to convict the defendant unless there also exists some non-accomplice testimony or evidence tying the defendant to the offense. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006). An accomplice is someone who, by an affirmative act, promotes the commission of the offense with which the defendant is charged. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). A witness is not an accomplice merely because the witness knew of the offense and did not disclose it, or even if the witness concealed the offense. *Id*. Complicity with a defendant in the commission of another offense separate from the charged offense does not make one an accomplice witness as to the charged offense. *Id*. "[I]f the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law." *Id*.

Here, there is no evidence that McKnight took any affirmative act to promote Reyna's murder. At most, the record establishes that McKnight assisted appellant in concealing evidence. However, such action does not rise to the level of an affirmative act to assist in the commission of murder or a lesser-included offense of murder. *See id*. at

17

499–500 (concluding that two witnesses in a murder prosecution were not accomplices for purposes of the accomplice witness rule where one assisted in the disposal of the decedent's body and a gun and both were paid a sum of money out the cash stolen from the decedent); *Nelson v. State*, 297 S.W.3d 424, 430 (Tex. App.—Amarillo 2009, pet. ref'd) ("Horton's actions in assisting with the washing of the pickup truck were not done with the intent to cause Schraer's death nor with the knowledge that such an action would cause the death of Schraer."). We conclude that the trial court did not err in failing to instruct the jury on the accomplice witness rule. *See Druery*, 225 S.W.3d at 498. We overrule appellant's fourth issue.

## IV. CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
26th day of August, 2021.

18